## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MEAGAN A. TROUPE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:15-cv-2340-LCB** |
| | ) | |
| **MEGAN J. BRENNAN, Postmaster** | ) | |
| **General, U.S. Postal Service,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Meagan A. Troupe[1] brought this action against Defendant Megan J.

Brennan, Postmaster General of the United States Postal Service, under Title VII for

alleged discriminatory and retaliatory conduct she experienced as a postal employee.

Plaintiff began working at the Post Office in Toney, Alabama in 2014. During her

tenure at the Post Office, Plaintiff was terminated twice but reinstated each time

before she was ultimately fired in July 2016. (Doc. 26 at 7). Plaintiff maintains that

she was fired and subjected to other negative consequences because of race and color

discrimination, as well as retaliation for filing grievances and EEO claims against

her supervisor Linda Smith. (*Id.* at 7–9). She also claims that she experienced a

hostile work environment while an employee. (*Id.* at 4). Defendant moves for

---

[1] Since filing this lawsuit, Plaintiff has married; her name is now Meagan Alexander. (Doc. 46–2
at 4).

summary judgment on all of Plaintiff's claims. For the reasons stated below, the Court finds that Defendant's motion is granted.

## I.       BACKGROUND

Plaintiff is an African American woman. (Doc. 26 at 1). She began working at the Post Office in Toney, Alabama on June 21, 2014, where she was classified as a postal support employee (PSE). (*Id*. at 3; Doc. 46–1 at 1). Plaintiff would typically arrive at the Post Office in the morning and work for as long as it took her to complete her duties for the day, typically three or four hours. (Doc. 46–2 at 31). In her position, she primarily worked with Linda Smith, the postmaster of the Toney office and Plaintiff's immediate supervisor. (*Id*. at 38). Plaintiff also interacted with Stacey Lee, a part-time flex (PTF) employee. Ms. Smith is black, and Ms. Lee is white. (Doc. 50 at 2, 15).

Within the first two weeks of her employment, Plaintiff was sent to window training, a week-long course that employees took to work the front counter at the post office. (Doc. 46–2 at 39, 43). Plaintiff was initially told that window training was unnecessary for her position. (*Id*. at 42). She had the training in Madison, Alabama, and subsequently took an exam to determine if she was qualified to handle window service. (*Id*. at 40). Plaintiff was the only employee from the Toney Post Office that failed the exam. (*Id*. at 40–41). After finding out that she had failed, Plaintiff told Ms. Smith about the results and asked what the next steps were

regarding her job. (*Id*. at 43). Ms. Smith told her "she would get back with [Plaintiff] and let [her] know." (*Id*.).

Plaintiff was soon told by Tasha Salem, an employee from Human Resources, that window training was required for her job and, having failed the exam, she would need to turn in her badge and keys. (*Id*. at 44). Following the call with Salem, Plaintiff received a letter of removal. (*Id.*). In response, Plaintiff filed a grievance through her union steward Sylvia Crane. (*Id*. at 45). A few months later, once it had been determined through the grievance process that window training was not required for PSEs, Plaintiff was reinstated in her position and offered $600 in compensation. (*Id*.). Plaintiff rejected the offer, believing $600 to be too little to compensate her for the humiliation she had suffered. (*Id.* at 46).

Plaintiff claims that this first termination was based on her race. (*Id.* at 47). As evidence for her claim, Plaintiff notes only that Smith was a "darker shade" of black than Plaintiff. (*Id*.). Plaintiff believes that it was the "postal service as a whole," not Smith alone, that discriminated against her regarding this termination. (*Id*.). Before failing the exam, however, Plaintiff's relationship with Smith had been "cordial" and a "[t]ypical management-employee relationship," and Smith said nothing "negative" to her about failing the test after her reinstatement. (*Id*. at 52). Plaintiff ultimately filed an EEO Complaint regarding this termination against

Derrick King, Manager of Post Office Operations, and Smith for discriminatory firing on October 22, 2014. (Doc. 49–2 at 2).

On July 29, 2014, after she had returned to work, Plaintiff had an altercation with employee Stacey Lee. (*Id*. at 53; Doc. 46–1 at 3). Lee began arguing with her because she claimed Plaintiff had parked in her parking space. (Doc. 46–2 at 53). Ms. Smith broke up the altercation and agreed it was best that Lee go home for the day. (Doc. 46–1 at 3). Plaintiff believes Ms. Lee confronted her over the parking space because she was black. (*Id*. at 57). Plaintiff had repeated negative interactions with Ms. Lee. (*Id*. at 58). Ms. Lee would "micromanage" Plaintiff and critique the way that she handled certain tasks. (*Id*. at 59). Ms. Lee also ignored Plaintiff because she felt "threatened and intimidated" by her. (*Id*. at 64).

Plaintiff's issues with Ms. Smith continued. On October 27, 2014, Plaintiff became aware of an opening for a permanent clerk position. (*Id*. at 71). While Plaintiff received the notification on the 27th, the deadline for applying for the position had been three days earlier. (Doc. 46–2 at 72).

Following this event, Plaintiff was injured at work on October 31, 2014. (Doc. 26 at 5). Plaintiff was performing her "normal work duties" when she lifted a box and felt a "pop in [her] back." (Doc. 46–2 at 76). Plaintiff continued to work that day, but when she woke the next morning she could not move her "lower extremities." (*Id*.). She called in to work and texted Smith to let her know what

happened. (*Id*. at 76–77). Plaintiff visited the doctor and was placed on sick leave for about a month. (*Id*. at 78). After her sick leave ran out, she was placed on leave without pay status. (*Id*.).

On December 9, 2014, Plaintiff received a disciplinary action form signed by Smith. (*Id*. at 79). The form indicated that Plaintiff was being disciplined for working in an unsafe manner when she injured herself. (*Id*. at 78). Plaintiff filed another grievance through Crane, her union representative, over the disciplinary action, and Crane called Smith, with Plaintiff on the phone, and "did all of the talking." (*Id*. at 80). The disciplinary action was later taken off Plaintiff's record. (*Id*. at 79).

While Plaintiff was on sick leave, a conversion opportunity arose and Plaintiff attempted to secure a promotion. (*Id*. at 83). Plaintiff ranked the jobs that she wanted in order of least to most desirable, indicating that she wanted to be relocated to either the Courtland or Tanner post office locations. (*Id*. at 83–87). Plaintiff did not receive information about these new conversion opportunities until November 14, 2014, after the deadline to apply for the new positions. (*Id*. at 83).

Plaintiff applied for worker's compensation after she was injured. (Doc. 46–2 at 103). Her claim was denied on December 23, 2014. (Doc. 26 at 5). Plaintiff received a disciplinary action from Smith on January 28, 2015, for failing to maintain a regular work schedule after her injury. (Doc. 26 at 5). Plaintiff admitted that she had been absent from work for a couple of weeks and she was out of leave.

(Doc. 46–2 at 113). She did not notify Smith directly that she was going to be absent but called in "through an automated system." (*Id.*). Before the action was issued, Smith conducted an investigative interview with Plaintiff over the phone with her union representative on the line. (*Id.* at 115). This disciplinary action was later rescinded. (*Id.*).

Once Plaintiff returned to work following her injury on February 27, 2015, Plaintiff was asked to sign a PS Form 2499 indicating that her duties would be modified because she hurt herself. (*Id.* at 105–6). She was asked to sign another 2499 Form that required her to perform more than sedentary work. (*Id.*) Her doctor limited her to sedentary work, but she perceived that the restrictions on the form were no different than the work she was doing before she was injured. (*Id.* at 106).

After experiencing missing more days of work, Plaintiff was terminated for a second time on April 27, 2015. (*Id.* at 115). Plaintiff was notified of her termination after receiving a letter of removal in the mail. (Doc. 46–2 at 116). Once Plaintiff was notified she was terminated, she contacted Sylvia Crane, her union representative, who filed another grievance on Plaintiff's behalf. (*Id.* at 117). Plaintiff also filed an EEO Complaint of Discrimination against Smith for race discrimination and retaliatory firing on August 6, 2015. (Doc. 49–13 at 3). Through the grievance process, Plaintiff asked for a work assignment at any post office within twenty miles other than the office in Toney. (Doc. 46–2 at 118). Although she was not relocated

through the grievance process, Plaintiff was reinstated in her position in Toney on June 2, 2015. (*Id*. at 119–20). Plaintiff was no longer under any medical restrictions from her previous injury. (*Id*. at 119).

On the morning of May 20, 2016, several months after Plaintiff had been back in her position, Plaintiff was approached by a man in the post-office parking lot. (*Id*. at 120). It was 4:00 a.m. and still dark outside, and the lighting was poor outside of the building, but once she was out of her car Plaintiff could see that the man was coming towards her in a "fast-paced manner." (*Id*. at 121–22). Plaintiff jumped in her car, drove away, and called the police. (*Id*.). The incident frightened Plaintiff, and she requested that Smith allow another person to open the store office with her in the morning. (*Id*. at 122). Smith denied this request, telling Plaintiff that "it was not within the budget." (*Id*.).

Because Ms. Smith failed to make this accommodation, Plaintiff did not feel comfortable coming back to work and her hours were reduced. (*Id*. at 127). Plaintiff worked sporadically after this incident but did not entirely attribute her absence to this event. (*Id*. at 129). She had received window training again and believed that additional hours should have been scheduled because of her new abilities. (*Id*.).

Nevertheless, Plaintiff was terminated a third time on July 27, 2016 for failing "to maintain a regular work schedule." (Doc. 26 at 7). That morning, Plaintiff was handed her letter of removal and told "we don't need you." (*Id*. at 130). Plaintiff

reached out to her new union representative but was told that because she was in a probationary period there was nothing that could be done to get her reinstated. (*Id.* at 131–32). However, her representative did file two grievances on her behalf to release her final paychecks. (*Id.* at 133–34).

Plaintiff maintains that she was subjected to these various negative experiences while an employee at the Toney Post Office because of illegal race and color discrimination under Title VII of the Civil Rights Act. (Doc. 26 at 7–8). She also claims that her working relationship with fellow employees like Ms. Smith and Ms. Lee created a hostile work environment. Plaintiff originally filed a complaint against Defendant on December 28, 2015. (Doc. 1). She refiled an amended complaint on September 21, 2017. (Doc. 26). Defendant moved for summary judgment on all of Plaintiff's claims on April 11, 2019. (Doc. 46).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes

demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each

element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

## III.   DISCUSSION

Defendant moves for summary judgment against Plaintiff on several grounds. First, Defendant argues that Plaintiff cannot relitigate claims that were already handled by the union grievance process, pursuant to 5 U.S.C. § 7121(d) and 29 C.F.R. § 1614.301(a), and thus Plaintiff could not raise her two dismissals and letter of warning[2] through a statutory procedure. (Doc. 47 at 12). Plaintiff argues that she is entitled to file a grievance and EEO complaint for the same claims of discrimination. (Doc. 50 at 28).

5 U.S.C. § 7121(d) governs grievance procedures for government employees. Pursuant to this section, "[a]n employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing." Notably,

---

[2] Defendant also argues that Plaintiff's grievance about her letter of warning includes complaints about modified work assignments and worker's compensation. (Doc. 47 at 12). However, having examined this grievance, the Court finds that the modified work assignment and worker's compensation issues fall outside the scope of this grievance. (Doc. 46-5).

an employee can raise an issue under a statutory procedure or a grievance procedure but cannot do both. *Id*. *See also* 29 C.F.R. § 1614.301. Accordingly, a federal employee who "alleges a discriminatory personnel practice 'must elect to pursue his claim under either a statutory procedure or a union assisted grievance procedure; he cannot pursue both avenues, and his election is irrevocable." *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d. Cir. 2002) (internal citations omitted). However, a party that chooses to grieve a complaint can appeal the decision to the EEOC. *Id*. at 54. After the EEOC has issued a decision, then a plaintiff can file suit within 180 days in district court. *Id*.

Plaintiff elected to raise her claims concerning the first two dismissals and her letter of warning through the grievance process, and that process resolved those issues. Plaintiff was allowed to return to work, and the letter of warning was removed from her record. (*See* Doc. 50). While Plaintiff filed EEO complaints, they were not filed to contest the outcome of the grievance procedure but to reiterate that Plaintiff felt either discriminated or retaliated against. Nothing in the record suggests that Plaintiff appealed the outcome of the grievance procedure to the EEOC. Thus, because Plaintiff has not exhausted her administrative remedies, she is barred from raising those same issues here. *Fernandez*, 471 F.3d at 52.

**A. Race and Color Discrimination Claims**

Plaintiff claims that her final removal was based on race and color discrimination. (Doc. 26 at 7). Plaintiff also claims that various other negative interactions she experienced were motivated by her race or color, including Smith's handling of the parking-space disputes. (*Id*. at 4). Defendant argues that she has failed to successfully prove elements of discriminatory treatment at the summary judgment stage. (Doc. 47 at 15).

Employers are prohibited from discriminating against their employees on the basis of race or color. 42 U.S.C. § 2000e-2(a)(1). A party attempting to prove that she was subject to disparate treatment can establish her case with direct or circumstantial evidence. *Burke-Fowler v. Orange Cty.*, *Fla*., 447 F.3d 1319, 1323 (11th Cir. 2006). Courts apply the *McDonnell Douglas* framework to evaluate claims based on circumstantial evidence. *Id*. *See also McDonnell Douglas Corp*. *v*. *Green*, 411 U.S. 792 (1973). To make a prima facie discrimination case under this framework, a party must show that: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Id*. (citing *E.E.O.C. v. Joe's Stone Crab, Inc*., 220 F.3d 1263, 1286 (11th Cir. 2000)). If a plaintiff satisfies the elements of a prima facie case, the defendant "has the burden of producing 'legitimate, non-discriminatory reasons for its employment action.'" *Joe's Stone*

*Crab*, 220 F.3d at 1286 (quoting *Holifield v. Reno*, 115 F.3d 1364, 1368 (11th Cir. 1999)). Once the defendant meets this burden, the plaintiff "has the ultimate burden of proving the reason to be pretext for unlawful discrimination." *Id*.

To demonstrate an adverse employment action, there must be "serious and material change in the terms, conditions, or privileges of employment." *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001). An adverse employment action is a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Webb-Edwards v. Orange Cty. Sherriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Kidd v. Mando*, 731 F.3d 1196, 1203 (11th Cir. 2013) (holding that in the case of demotion, plaintiff must show "the change in responsibilities was 'so substantial and material that it [] indeed alter[ed] the "terms, conditions, or privileges" of [her] employment.") (alteration in original) (citing *Davis*, 245 F.3d at 1245).

For a plaintiff to show that she has been discriminated against because of a protected characteristic, she can introduce evidence that she was treated differently than a proffered comparator, a person "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).

While there is no set formula to determine who may be considered a proper comparator, the Court will consider whether the similarly situated comparator has "engaged in the same basic conduct (or misconduct) as the plaintiff," *id.* at 1227 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992); has "been subject to the same employment policy, guideline, or rule as the plaintiff," *id.* (citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999); has ordinarily "been under the jurisdiction of the same supervisor as the plaintiff," *id.* at 1227–28 (citing *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989)); and has "share[d] the plaintiff's employment or disciplinary history," *id.* at 1228 (citing *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) at 1228–29. Ultimately, "a plaintiff and her comparator[] 'must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished.'" *Id.* (quoting *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 209 (2015)).

However, if a plaintiff does not have a comparator for her claim, it is not automatically fatal to a prima facie case. A prima facie case can also be made by showing a "'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Id.* at 1220, n.6 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *see also Alvarez v. Royal Atl. Dev.*, *Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) ("The methods of presenting a prima facie case are flexible and depend on the particular situation.")

### 1. Plaintiff's Non-Removal Claims

Defendant contends that summary judgment is appropriate for Plaintiff's non-removal discrimination claims because the allegedly discriminatory actions do not rise to the level of an adverse employment action. (Doc. 47 at 17). Plaintiff' non-removal claims amount to seven incidents she alleges were motivated by race or color discrimination; specifically, Plaintiff alleges that: (1) "she was harassed by coworkers about where she parked her car; (2) she was denied the opportunity to retake the window training class and certification exam while she was still ineligible to retest; (3) she did not receive mail regarding conversion opportunities until after the selection period closed (but admits receiving same packet by email and submitting selections); (4) she was issued letters of warnings for failing to maintain a regular work schedule; (5) she was denied Worker's Compensation by the Department of Labor and a modified duty assignment; (6) her hours were cut [on] May 20, 2016; and (7) that her Continuance of Pay was not restored." (Doc. 47 at 17–18).

Resolving all reasonable doubts in Plaintiff's favor, none of Plaintiff's claims of alleged discriminatory treatment can survive summary judgment. When reviewing the evidence in this case, no reasonable factfinder could conclude that Plaintiff was subject to these actions because of her race or color. Considering Plaintiff's above allegations, she has not presented evidence that the disputes over

parking spaces or letters of warning altered the "terms, conditions, or privileges" of her employment. *Holland*, 677 F.3d at 1057; *see also Chapman v. U.S. Postal Service*, 442 F. App'x. 480, 485 (11th Cir. 2011) (holding that a letter of warning was not an adverse employment action where Plaintiff had not adequately alleged that it affected the terms, conditions, or privileges of her employment). While the remaining allegations could constitute adverse employment actions, Plaintiff must still demonstrate her employer was had discriminatory reasons for its actions.

As Plaintiff has provided no direct evidence of race or color discrimination, her case depends on circumstantial evidence. While Plaintiff could attempt to establish a prima facie discrimination case with a comparator, she has proffered no valid comparator to show that she was treated differently than someone "similarly situated in all material respects." *See Lewis*, 918 F.3d at 1228. Without direct evidence or a comparator, Plaintiff can make a prima facie case of discrimination only by presenting the "convincing mosaic of circumstantial evidence" warranting an inference of intentional discrimination. *See id.* at 1220 n.6. No reasonable factfinder, however, could conclude that Plaintiff has shown such a "convincing mosaic" of circumstantial evidence. *Id.* at 1220 n.6. Smith's comments about Plaintiff's skin complexion and her comment to Plaintiff that "we are in Toney, Alabama," even taken together, do not aggregate to the "convincing mosaic of

circumstantial evidence" required to support a reasoned inference of discriminatory intent.

Nor has Plaintiff presented any circumstantial evidence against any other superiors to create an inference of race or color discrimination. Indeed, Plaintiff's only basis for believing that Mundi discriminated against her was that Mundi "just knew that [her] race was black." Without more circumstantial evidence, these claims cannot succeed. (Doc. 46–2 at 110) Accordingly, Defendant's motion for summary judgment as to Plaintiff's Race and Color Discrimination claims is **GRANTED**.

### 2. Plaintiff's Removal Claim

Defendant does not contest that Plaintiff's final removal was an adverse employment action. Instead, Defendant contends that summary judgment is appropriate on Plaintiff's removal claim because: (1) she has no evidence of discrimination to make a prima facie case; and (2) Defendant had a "legitimate, non-discriminatory reason" for firing her. (Doc. 47 at 21–24).

Plaintiff contends that her final dismissal was motivated by color discrimination. Plaintiff was distressed after encountering a suspicious man at the post office, so she returned to work sporadically after the incident. She was terminated for the last time on July 27, 2016, for failing to maintain a regular work schedule. (Doc. 46–1 at 11). She believes Ms. Smith fired her in part because of her color. (Doc. 46–2 at 131).

As with her related non-termination claims, Plaintiff cannot establish a prima facie discrimination case. In support of her claim, Plaintiff asserts Smith targeted her for her color because she remarked "[Plaintiff] had a very even skin tone" and "asked why [Plaintiff] wore makeup to work." (*Id*. at 58). Plaintiff presents neither direct evidence, a comparator, nor the requisite "convincing mosaic of circumstantial evidence" to make out a prima facie case of discrimination. Accordingly, Plaintiff has not proven a prima facie case regarding her last termination.

As Plaintiff as not successfully proven a prima facie case regarding any of her termination claims, it is unnecessary to discuss whether Defendant's reasons for her terminations is legitimate or pretext for discrimination. Therefore, Defendant's motion to dismiss Plaintiff's Race and Color Discrimination claims is **GRANTED**.[3]

## B. Retaliation Claims

Defendant moves for summary judgment on Plaintiff's retaliation claims on the grounds that (1) some do not constitute an adverse employment action; (2) there is no causal connection between an adverse action and Plaintiff's EEO activity; or (3) Defendant had a legitimate, non-discriminatory reason for any adverse employment action. (Doc. 47 at 30).

---

[3] The Court notes that Plaintiff pleaded a separate count of wrongful termination. However, as Plaintiff tied her wrongful termination claim intrinsically with discrimination, any remaining claim is resolved as Plaintiff's race and color discrimination claims cannot survive summary judgment.

To establish a prima facie retaliation case under Title VII, a party must show "(1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action." *Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999) (internal quotation marks omitted) (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). If the plaintiff established a prima facie case, the defendant "has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Once a defendant meets this burden, the plaintiff has the "ultimate burden" of proving that the defendant's reason is pretext for "prohibited, retaliatory conduct." *Id*.

An employee's complaint about discrimination is protected expression "if the employee could 'reasonably form a good faith belief that the alleged discrimination existed.'" *Jefferson v. Sewon America, Inc*., 891 F.3d 911, 924 (11th Cir. 2018) (quoting *Taylor*, 175 F.3d at 869). An adverse action in a retaliation claim refers not only to "ultimate employment decisions" such as termination, but "actions which fall short of ultimate employment decisions. *Wideman*, 141 F.3d at 1456. These actions include demotions or failing to promote an employee. *Id*. (internal citations omitted).

A causal connection can be established if "the protected activity and the adverse action are not completely unrelated." *Wideman v. Wal-Mart Stores*, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998) (quoting *Meeks v. Comput. Assocs. Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994)). An alleged victim of retaliation must prove "[the] protected activity was a but-for cause of the alleged adverse action by the employer." *Trask v. Sec'y, Dept. of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). Stated plainly, a plaintiff must show "that had she not complained, she would not have been [subject to an adverse employment action]." *Jefferson*, 891 F.3d at 924; *see also Thomas v. Cooper Lighting, Inc.* 506 F.3d 1361, 1364 (11th Cir. 2007) ("[M]ere temporal proximity, without more, must be 'very close'… A three to four month disparity between the statutorily protected expression and adverse employment action is not enough.") (internal citations omitted).

### 1. **Plaintiff's Non-Termination Claims**

As she argued in response to Plaintiff's discriminatory treatment claims, Defendant argues that Plaintiff cannot succeed on many of her retaliation claims because they do not constitute adverse employment actions. (Doc. 47 at 27). Short of her three terminations, Plaintiff claims that many negative actions she experienced were in retaliation for filing grievances and EEO complaints alleging race and color discrimination. (*See* Doc. 50 at 4). These alleged adverse actions include: (1) failing

to send Plaintiff back for window training and retesting; (2) failing to send an opportunity for conversion in a timely manner; (3) and being denied worker's compensation for her previous injury.[4]

Plaintiff consistently filed grievances and EEO complaints while she was a Postal Service employee. (*See* Doc. 46–2). Because of the overlap that exists between these grievances and EEO filings, Plaintiff contends "that there is a close temporal proximity between all the events between June 27, 2014 and July 27, 2016." (Doc. 50 at 37). Assuming, *arguendo*, that her accusations indeed are adverse actions and that the temporal connection is satisfied, Plaintiff still cannot survive summary judgment as to these claims: Defendant has met its burden of showing a "legitimate, non-retaliatory reason" for these allegations. *Pennington*, 261 F.3d at 1266. Smith provided that Plaintiff was not sent back for window training because she was ineligible to take it within six months of failing the test and the office needed "to receive higher approval" before sending clerks to window training if it was not a requirement. (Doc. 46–1 at 4). Regarding Plaintiff's conversion opportunity, Ms. Smith offers evidence that she sent Plaintiff the information about the opportunity

---

[4] Plaintiff asserts that she did not receive an announcement for a new job opportunity in October 2014 that coworker Celeste was considered for. (Doc. 46–2 at 72). However, Plaintiff first admitted she did not have direct knowledge Ms. Smith mailed the announcement and later evidence determined Ms. Smith did not mail this announcement. (*Id.*; Doc. 46–3 at 4). Because this claim of retaliation is targeted towards Ms. Smith, this claim will not be considered. Further, Plaintiff's letter of warning for working in an unsafe manner will not be considered as it was resolved in the grievance process.

and confirmed that she received it. (Doc. 46–1 at 5, 24). Finally, Defendant's evidence reflects that the Office of Worker's Compensation Program (OWCP) denied Plaintiff's claim, and there is no evidence that Smith or Mundi had influence over the OWCP's decision. (*Id*. at 53).

The burden therefore shifts to Plaintiff to show that Defendant's reasons are a pretext for retaliation. *Pennington*, 261 F.3d at 1266. A showing of pretext requires a party to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" with an employer's reasons "that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)); *see also Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (A plaintiff has the burden of producing "sufficient evidence" for a reasonable factfinder to "conclude [defendant's] articulated reasons were not believable.") Regarding these claims, Plaintiff has not presented any evidence—except her own intuitions—from which a reasonable factfinder could find the reasons inconsistent, incoherent, or contradictory. *See Jackson*, 405 F.3d at 1289. Because no reasonable factfinder could conclude that Defendant's proffered non-retaliatory reasons for pretextual, Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment as to these claims is therefore **GRANTED**.

### 2. Plaintiff's Termination Claim

Plaintiff also argues that her final termination was based on retaliation because of her previous grievances and EEO claims filed. However, Plaintiff's claim cannot survive summary judgment, even if there are "overlapping" time periods that create a temporal connection as Plaintiff suggests. (Doc. 50 at 37). Defendant has presented a legitimate, non-retaliatory reason for this firing. When Plaintiff was terminated for the final time, Defendant noted that she had failed to report consistently to work and had thus been fired for her excessive absences. (Doc. 46-1 at 12). With a legitimate, non-retaliatory reason established, Plaintiff must show these reasons are a pretext for retaliation. But again, Plaintiff offers no evidence that Defendant's proffered reasons were pretextual besides her own suspicions. Because no reasonable factfinder could conclude that Defendant's reasons are pretextual, Defendant is entitled to judgment as a matter of law on this claim. Accordingly, Defendant's motion for summary judgment as to Plaintiff's retaliation claim is **GRANTED**.

### C. Hostile Work Environment[5]

Finally, Defendant challenges Plaintiff's claim that she experienced a hostile work environment while a Post Office employee. (Doc. 47 at 30). Defendant

---

[5] Plaintiff does not unambiguously argue that she experienced a hostile work environment in her amended complaint. (Doc. 26). Allegations of hostile work environment are included with Plaintiff's disparate treatment allegations. However, the Court will address this issue as Defendant included argument in its brief supporting its Motion for Summary Judgment. (Doc. 47).

contends that Plaintiff's harassment claims, even when aggregated, "are insufficient to support a hostile work environment claim." (*Id*.).

A hostile work environment is a "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys*., *Inc*., 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986). A party seeking "to establish a hostile work environment claim must show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or direct liability." *Miller v. Kenworth of Dothan*, *Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002); *see also Reeves v. C.H. Robinson Worldwide*, *Inc*., 594 F.3d 798, 807 (11th Cir. 2010) (observing that "a plaintiff must show that her employer discriminated because of her membership in a protected group, and that the offensive conduct was either severe or pervasive enough to alter the terms or conditions of employment.") Regarding the fourth element of the test, "a plaintiff [must] prove that the work environment is subjectively and objectively hostile."

*Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1249 (11th Cir. 2014) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1256 (11th Cir. 1999)). Notably, even though an offended party may be subjected to offensive action or language, "Title VII is not a civility code." *Reeves*, 594 F.3d at 807; *see also Alvarez*, 610 F.3d at 1266 ("[The Court] does not sit as a 'super-personnel department'") (internal citations omitted).

Construing the facts in the most favorable light to Plaintiff, she has not created a genuine dispute of material fact that she was subjected to a hostile work environment. The circumstances she described are not such that point to a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. While Plaintiff certainly had negative experiences with her supervisor and coworkers, even if Plaintiff could satisfy the first two elements of a hostile work environment claim, she could not satisfy the third: no reasonable factfinder could conclude that the allegedly hostile comments and actions were based on Plaintiff's race or color. For example, her coworker Ms. Lee telling her that she was performing a job function incorrectly may have been irritating, but Plaintiff has not presented any evidence that would lead one to conclude Lee's comments were discriminatory. Further, even if the comments Ms. Smith made about her skin tone were motivated by Plaintiff's color, no reasonable factfinder could conclude that they were severe or pervasive enough to constitute a hostile work environment. If true, comments

about Plaintiff's appearance are inappropriate. However, under Eleventh Circuit precedent, these incidents do not rise to a level that is actionable. Therefore, as Plaintiff has not created a genuine dispute of material fact on this issue, Defendant's motion for summary judgment on this claim is **GRANTED**.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (Doc. 46) is **GRANTED**. A separate final judgment will issue contemporaneous with this order.

**DONE** and **ORDERED** this March 31, 2020.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE